FAIR OAKS STAVE COMPANY *v.* SHUE.

Opinion delivered December 21, 1931.

*L. L. Campbell* and *E. L. Westbrooke,* for appellant.

*W. J. Dungan, E. M. Carl-Lee* and *Tom W. Campbell,* for appellee.

McHANEY, J. Appellant is a partnership composed of J. R. Riable, B. C. Wallace and A. E. Coyle. The Miller Lumber Company, in connection with its lumber plant, owns a tramroad running northward from a junction with the Missouri Pacific Railroad, known as C Spur, a distance of about eight miles in Woodruff County. It was built for the use of said lumber company in hauling logs to its mill. It is not a railroad in the common acceptation of that term, is not a common carrier, as it hauls no freight or passengers for hire or otherwise. By virtue of a contract with appellant, it permits appellant to use the tramroad, with appellant's equipment, for the purpose of hauling stave bolts from the woods along the tram to the public highway crossing said tram, where the bolts are unloaded and trucked into Fair Oaks and manufactured into staves. Appellant's equipment for hauling bolts consisted of a Fordson tractor set on a small flat car, built for the purpose, which was geared to the trucks of the flat car, with a flat car in front and one behind for hauling the bolts. When the machinery was going northward, the tractor was headed north, but, when coming south, the tractor was in reverse and backed up, and operated at a rate of three or four miles per hour. Appellant paid the lumber company 25 cents a cord for the privilege of operating over its tram at such time as their operations would not interfere with that of the lumber company. On the evening of August 17, 1929, appellee and his wife drove from their home in a truck to C Spur and there borrowed a hand-car from a man by the name of Henry Cupples, who was in the employ of the Miller Lumber Company, and started to visit his uncle, Charlie Shue, who lived some distance north of C Spur. The hand-car was an old-fashioned one, operated by pumping the handles up and down, and Mrs. Shue assisted her husband in operating the car for a short time. They were traveling north and were advised by Cupples before leaving that appellant's equipment was in north on the line about

Charlie Shue's place and to look out for it. Appellee and his wife started northward on the hand-car in the night-time, without any light thereon, and about a mile and one-half to two miles north of the highway crossing they had a collision with appellant's equipment coming southward, which resulted in the serious injury and subsequent death of appellee's wife. The hand-car made a considerable noise, and appellee had his back to the north while operating the car. There was no light on appellant's equipment, and no lookout was kept as the equipment was backed southward toward C Spur.

Appellee brought two actions against appellant, one as administrator of the estate of his wife for the benefit of the estate; the other for the benefit of the children for loss to them of the mother's care, training and companionship. It was alleged in the complaint, and some proof to support the allegation was offered, that it was customary for people in the vicinity to use the hand-car on the tramroad, and it was alleged that this custom was known to appellants. It was further alleged that appellants had always operated their equipment with a light on each end of the cars when operated after dark, but that upon the night of the collision there were no lights on the cars, and that appellants were negligent in operating their equipment without them. The answer denied all the material allegations of the complaint, and pleaded the contributory negligence of appellee and his wife as a defense. At the conclusion of appellee's testimony, and again at the conclusion of all the testimony, appellant requested a directed verdict which was refused. The jury found for appellant in the action for the benefit of the estate, but in the action for the benefit of the children there was a verdict for $1,500, and from the judgment thereon this appeal is prosecuted.

Appellee and his wife were on a joint mission to the home of Charlie Shue, for business and pleasure. They were advised by Mr. Cupples to "look out for that moose," meaning the tractor and two cars operated by appellant. He and his wife both assisted in operating

the hand-car, he with his back to the north and she with her face to the north when assisting in the operation. When not so assisting, she stood between the handles with her face to the north or east. Although advised to look out for this equipment, neither did so, but blindly proceeded into a collision, which resulted in her death. We think they were both guilty of contributory negligence as a matter of law, which precludes a recovery. Appellants were not required to keep a lookout as they were not operating a railroad as owners, lessees or otherwise. No statute of this State applicable to railroads applies. The injury did not occur at a highway crossing. Conceding that appellant's employees were negligent in the operation of that equipment in failing to have a light on the front end, appellees were guilty of contributory negligence, and cannot recover. The comparative negligence statute, (§ 8575, Crawford & Moses' Digest) has no application for the reason that this is not a suit against a railroad, and the injury was not caused by the running of a train. Nor does § 7145 of the Digest apply for the reason that the action is not against a corporation, nor is the appellee an employee of appellant. Appellee and his wife being on a joint mission, and both being guilty of contributory negligence as a matter of law, no recovery can be had, and the court should have directed a verdict in appellant's favor at their request, even though appellant may have been guilty of negligence. The judgment will be reversed, and the cause dismissed. It is so ordered.